UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

RICHARD R. CUEVAS AND                                                CASE NO. 08-51337-NPO
CAROLYN M. CUEVAS,

    DEBTORS.                                                                          CHAPTER 13

MEMORANDUM OPINION AND ORDER
DENYING CONFIRMATION OF DEBTORS' ORIGINAL CHAPTER 13 PLAN

On April 16, 2009, there came on for hearing (the "Hearing") the original chapter 13 plan ("the Plan") (Dkt. No. 8) filed by Richard R. Cuevas and Carolyn M. Cuevas (the "Debtors"); the Objection to Confirmation (the "Objection") (Dkt. No. 44) filed by the chapter 13 Trustee, Warren A. Cuntz, Jr., (the "Trustee"); and the Debtor's (sic) Response to the Trustee's Objection to Confirmation (the "Response") (Dkt. No. 50). David L. Lord represented the Debtors at the Hearing, and Phillip Brent Dunnaway represented the Trustee. The Court, having considered the pleadings, testimony, evidence presented at the Hearing, and applicable authorities, finds that the Debtors' Plan does not meet the requirements for confirmation under 11 U.S.C. § 1325(a)(3)-(4).[1] Therefore, the Trustee's Objection is well taken and should be sustained, and confirmation of the Plan should be denied.[2]

---

[1] Hereinafter, all code sections refer to the Bankruptcy Code located at Title 11 of the United States Code unless otherwise noted.

[2] After the Court's bench ruling on the matter, the Debtors filed an amended plan ("Amended Plan"). (Dkt. No. 55).

**Jurisdiction**

This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A) and (L). Notice of the Hearing on the Objection was proper under the circumstances. (Dkt. No. 47).

**Facts**

1. On August 12, 2008, the Debtors filed their voluntary petition (the "Petition") (Dkt. No. 1) pursuant to chapter 13 of the Bankruptcy Code. Also on August 12, 2008, the Debtors filed their Schedules and Statement of Financial Affairs (Dkt. No. 2) and the Plan. Under the Plan, the Debtors proposed a 38% distribution to unsecured creditors over sixty (60) months. The Statement of Financial Affairs reflected several transfers of property that were made to children of the Debtors shortly before the filing of the Petition. See Statement of Financial Affairs at para. 10.

2. The Meeting of Creditors pursuant to § 341 ("341 Meeting") was duly noticed (Dkt. No. 9) and was conducted by the Trustee on September 19, 2008. Testimony of the Debtor, Carolyn M. Cuevas ("C. Cuevas"), was taken at the 341 Meeting.

3. On October 20, 2008, the Trustee filed a Motion for Enlargement of Time to Object to Confirmation ("Motion for Time") (Dkt. No. 30). In the Motion for Time, the Trustee made the following request:

> On question 10 of the Debtors' Statement of Financial Affairs, Debtors' disclosed several transfers of property to their children occurring in May and June of 2008. The Trustee needs additional time to investigate the transfers and object to confirmation, if appropriate.

(Motion for Time at para. 2). An Agreed Order was entered granting the Motion for Time. (Dkt.

No. 38). Amended Agreed Orders were granted subsequently to extend the time further for the Trustee to investigate the transfers and to file an objection to confirmation. (Dkt. Nos. 40, 42).

4. On March 16, 2009, the Trustee filed the Objection. The Trustee requested that confirmation of the Plan be denied based on the Debtors' failure to satisfy the good faith test contained in § 1325(a)(3) and the liquidation test contained in § 1325(a)(4), as specified in paragraphs 4 and 5 of the Objection.

5. The Debtors filed their Response to the Trustee's Objection on April 12, 2009, setting forth that:

> Debtors . . . affirmatively allege that the property having a value of $331,000.00 was their homestead property, encumbered at the time of conveyance in the amount of $155,000.00 with a monthly mortgage payment of $1,440.00. The Debtors are entitled to a homestead exemption of $75,000.00 and are entitled, pursuant to § 85-3-49 of the Mississippi Code of 1972, Annotated and Amended, to dispose of exempt property. After deducting the anticipated costs of sale or alternate disposal, a net non-exempt value of $81,000.00 is provided for payment to unsecured creditors under the terms and conditions of the Debtor's Chapter 13 plan as proposed. The remaining transfers are also provided for under the terms and conditions of the Debtor's Chapter 13 plan as proposed with an additional $46,171.00 provided for payment to unsecured creditors.

(Response at p. 1). The Debtors further allege that the Plan "is proposed in utmost good faith" and that it provides "a greater dividend to unsecured creditors than would be achieved in Chapter 7," and that it complies with §§ 1325(a)(3)-(4).

**The Hearing**.

**1. Trustee's Testimony.**

The Trustee testified at the Hearing that the two bases for his Objection were the Plan was filed in bad faith,[3] and it did not meet the liquidation test.[4] He observed that the transfers of property were made to the Debtors' children within months of the bankruptcy at a time when the Debtors were clearly insolvent. He argued that the value of properties transferred to the Debtors' children should have been considered in computing the distribution to be made to unsecured creditors under the proposed Plan.

In his analysis of the liquidation test, the Trustee estimated that the Debtors had $369,019.82 in non-exempt property available for distribution to creditors when the property transferred to their children was included. He stated that the bar date for filing claims in the bankruptcy proceeding had expired and that the claims filed totaled $170,879.36. Full payment to creditors would require 54 payments at $3,120 per month. Based on the value of property available for distribution, the Trustee's analysis showed that the unsecured creditors should receive payment in full. The Debtors' Plan proposed only a 38% distribution to unsecured creditors, or $127,000.00.[5]

---

[3] Section 1325(a)(3) requires that a plan must be proposed in good faith.

[4] The liquidation test under § 1325(a)(4) requires that the value to be distributed on behalf of unsecured claims is not less than the amount that would be paid on these claims if the estate of the Debtors were liquidated under chapter 7, in which case the non-exempt property of the bankruptcy estate would be liquidated for distribution to creditors. *See* In re Rexroad, 2006 WL 2728838, 3 (Bankr. S.D. Tex. 2006); In re McCollum, 363 B.R. 789, 797 (E.D. La. 2007) (Section 1325(a)(4) is known as the "best interests of creditors test.")

[5] The Debtors' original Schedule F lists Creditors Holding Unsecured Non-Priority Claims in the amount of $332,017.03. The Plan as originally proposed provides that unsecured debts total approximately $334,662.45. Thirty-eight percent of that figure is $127,171.73. The case amounts to a dispute primarily over payment of approximately (Continued to p. 5)

The Trustee testified that certain transfers to the Debtors' children were disclosed in their bankruptcy proceeding. Specifically, paragraph 10 of the Debtors' Statement of Financial Affairs (Dkt. No. 2) provides that in May of 2008, 170 shares of Hancock Bank stock valued at $7,000.00 were transferred to Keshia Necaise, the Debtors' daughter. In June of 2008, three parcels of real estate were transferred to Scottie Cuevas, the Debtors' son, including the transfer of one-half acre in Pass Christian, Mississippi, valued at $6,000.00 (Trustee's Exhibit No. 4), a house and lot (on waterfront property in Jordan River estates) in Kiln, Mississippi valued at $225,000.00 (Trustee's Exhibit No. 2), and 25 acres in Pass Christian, Mississippi valued at $100,000.00 (Trustee's Exhibit No. 3). In addition to those disclosed transfers, upon examination of bank account records, the Trustee stated that he discovered a June 23, 2008, telephonic savings account transfer in the amount of $31,019.82 from Hancock Bank. (Trustee's Exhibit No. 6). Testimony at the 341 Meeting provided that the transfer went to an account at Keesler Federal Credit Union belonging to the Debtors' son. The Trustee argued that all of the transfers were made without consideration and occurred shortly before the filing of the Petition.

As previously stated, the Trustee's calculations showed that the value of the properties transferred to the Debtors' son and daughter was $369,019.82. Even if the Trustee deducted the $155,000.00 for the home mortgage,[6] the Trustee found that $214,019.82 remained for distribution

---

(Continued from p. 4) $40,000.00, being the difference between the $127,171.73 provided by the original Plan and the $170,879.36 in claims timely filed. At the conclusion of the Hearing, Debtors' counsel agreed that the amount to be distributed should be increased by $9,000.00 (to account for funds paid to the Debtors' son from the $31,000.00 bank account transfer discussed herein), thereby increasing the proposed distribution to $136,171.73. Nevertheless, the Trustee claims that amount is insufficient to meet the requirements of § 1325.

[6] The Trustee had not included the mortgage in his calculations because testimony at the 341 Meeting indicated that the mortgage had been paid off by the son when (Continued to p. 6)

on the claims, requiring a 100% payment on unsecured claims.

The Trustee testified that the Debtors' response to his Objection, in which the Debtors' claimed they were entitled to homestead exemption on the house and lot, did not change his position that the Debtors' Plan failed the liquidation test. He noted an express representation that the property was not homestead was contained in the warranty deed in which the Debtors conveyed the house and lot to their son and his wife.[7] In addition, the Debtors' Schedule C reflected no claim of homestead exemption for the property. Accordingly, the Trustee took the position that the Debtors were not entitled to this homestead exemption.

### 2. C. Cuevas's Testimony.

C. Cuevas testified at the Hearing that the Debtors were experiencing a financial strain in 2006 and 2007. She stated that the Debtor, Richard R. Cuevas, had experienced medical problems with related expenses. The Debtors' insurance did not pay all medical expenses and their children were helping with bills and expenses. C. Cuevas testified that the properties were transferred to their son and daughter because of debts owed to them.[8] When asked why her children were not listed as creditors in the bankruptcy schedules, she stated that they listed business debts and that the debts to

---

(Continued from p. 5) the property was transferred to him.

[7] The Trustee's Exhibit No. 2 contains the following clause: "The Grantors herein certify that the property hereinabove conveyed forms no part of the homestead of the Grantors." No documentary evidence was offered by the Debtors to show that they claimed homestead exemption for that property.

[8] Trustee's counsel played a portion of the testimony of C. Cuevas recorded at the 341 Meeting wherein she indicated that the transfers to the children were donations.

the children were personal.[9]

C. Cuevas also testified that they had experienced financial difficulties in the family's construction business. Her testimony affirmed that at the time of transfers to their children, the Debtors had received threats of lawsuits from creditors.[10] She stated that they fell behind on their mortgage payments and the property was being foreclosed. C. Cuevas asserted that the house and lot were conveyed to her son, he paid off the mortgage, and the Debtors then paid him rent of $1,000.00 per month.[11]

C. Cuevas also indicated that the 25 acres transferred to her son was an inheritance of raw land from her father. She stated that the $31,000.00 amount that was transferred to her son had been released by the bank after her son paid off the mortgage. She also stated that out of that amount, $13,000.00 was used to cover overdrafts and an additional $9,000.00 was paid to their son to reimburse him for expenses he had paid for them.

Subsequent to the property transfers, the Debtors filed their Petition, original Schedules and Statement of Financial Affairs, and original Plan. Counsel for the Debtors indicated at the Hearing that the Statement of Financial Affairs had not been amended to reflect the omitted $31,000.00

---

[9] As pointed out to C. Cuevas by Trustee's counsel at the Hearing, however, the Debtors' bankruptcy case is a chapter 13 filing in which all debts owed by the Debtors, individually, should be included. In fact, Cuevas Construction, Inc. ("Cuevas Construction") filed a separate chapter 7 proceeding in Case No. 08-51203. However, it appears that the filing of the original Schedules (Dkt. No. 2) was the Debtors' attempt to list "personal" debts and the filing of the Schedules of Cuevas Construction in the Debtors' case (Dkt. No. 25) was their attempt to list any personal liability for the corporate debt.

[10] Paragraph 4 of the Statement of Financial Affairs lists a lawsuit filed against Cuevas Construction and Richard Cuevas in Harrison County, Mississippi.

[11] The Trustee pointed out that no rent was listed on Schedule J.

transfer to her son.

## Discussion

Section 1325 of the Bankruptcy Code provides the following, in pertinent part:

(a) Except as provided in subsection (b), the court shall confirm a plan if –

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. § 1325(a)(3)-(4).

In In re Barfknecht, the bankruptcy court in Texas considered the test to be used to determine good faith under § 1325(a)(3):

> The chapter 13 trustee also objects to the Debtors' plans on the ground that, in his view, they are not proposed in good faith. *See* 11 U.S.C. § 1325(a)(3). This court has considered good faith in the context of chapter 13 plans before, albeit pre-BAPCPA. *See In re McLaughlin,* 217 B.R. 772, 776 (Bankr. W.D. Tex.1998). While this court has not re-visited the question in the post-BAPCPA context, decisions by other courts within the circuit, as well as at least one unpublished opinion of the Fifth Circuit, indicate that the traditional test employed pre-BAPCPA should still be used today. *See In re Stanley,* 224 Fed. Appx. 343, 2007 WL 1026423 (5th Cir. Mar. 29, 2007); *In re Charles,* 334 B.R. 207, 217-18 (Bankr. S.D. Tex. 2005) (employing the "totality of circumstances" test); *In re Reinicke,* 338 B.R. 292, 296 (Bankr. N.D. Tex. 2006) (considering several factors like those used in the "totality of circumstances" test). In applying this test, "[t]he trick seems to be not placing too much weight on any single factor, but in the court's looking at how a number of factors in any given case operate together to betray a plan proposed in bad faith." *In re McLaughlin,* 217 B.R. at 775-76 (citing L. Clark & S. Lane, *Having Faith in Good Faith Analysis,* 683 PLI/Comm. 669 (Practicing Law Institute 1994)). This approach comports with the long-held view of the Fifth Circuit that the purpose of the good faith test is to prevent the confirmation of a plan where "the debtor either does not intend to effectuate the plan as proposed or where the proposed plan is for a purpose not permitted under [T]itle 11." *See In re Chaffin,* 816 F.2d 1070, 1074 (5th Cir.1987) ("*In re Chaffin I*")

(quoting S. Rep. No. 150, 97th Cong., 1st Sess. 18 (1981)).

In re Barfknecht, 378 B.R. 154, 163 (Bankr. W.D. Tex. 2007).

The Fifth Circuit, in In re Stanley, provided the following on the requirement of good faith:

To determine whether a Chapter 13 plan was filed in good faith, the bankruptcy court applies a "totality of the circumstances" test. Under this test, the court considers such factors as (1) "the reasonableness of the proposed repayment plan," (2) "whether the plan shows an attempt to abuse the spirit of the bankruptcy code," (3) whether the debtor genuinely intends to effectuate the plan, (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities, (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay, (6) whether the plan reflects the debtor's ability to pay, and (7) whether a creditor has objected to the plan. In applying this test, the bankruptcy court "exacts an examination of all of the facts in order to determine the bona fides of the debtor."

In re Stanley, 224 Fed. Appx. 343, 346, 2007 WL 1025423 (5th Cir. 2007)(internal citations omitted).

In In re Meador, the Texas bankruptcy court held the following regarding good faith:

Pursuant to section 1325(a)(3), to be entitled to confirmation, the chapter 13 plan must have been proposed in good faith and may not have been proposed by any means forbidden by law. The determination of whether a plan was proposed in good faith is to be based on all of the circumstances of the case. *See* 8 *Collier on Bankruptcy* ¶ 1325.04 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) and cases cited therein.

No comprehensive definition of good faith exists for purposes of § 1325 and 1307. Courts must define good faith on a case by case basis. Several factors may guide the court's inquiry into good faith. These include whether there are any deficiencies or inaccuracies in debtor's schedules or plan that might amount to an attempt to mislead the court; whether payments proposed by the plan are fundamentally fair in dealing with creditors, including consideration of timing of filing, amount and proportion of debt that would not be dischargeable in a liquidation, equities of any classification; whether debtor had any improper motivation in seeking relief, as indicated, in part, by circumstances under which debts were incurred. These factors and others constitute a totality of circumstances on which the court is to determine whether or not there has been an abuse of a provision, purpose or spirit of Ch 13. *See In re Chaffin,* 836 F.2d 215 (5th Cir.1988).

In re Meador, 2008 WL 243673, *5 (Bankr. S.D. Tex. 2008).

Based on the totality of circumstances in this case, the Court finds that the Debtors' Plan was filed in bad faith and that confirmation should be denied. At the Hearing, the Court in its bench ruling held that the case should be dismissed, with a 180-day bar upon refiling, unless an amended plan providing payment in full to unsecured creditors and an amended Statement of Financial Affairs disclosing all transfers of property were filed.[12]

The Court takes into consideration the following, in reaching its conclusions:

1. The Debtors transferred approximately $370,000.00 in property to their children without consideration within three months of filing their Petition, and proposed a plan that provided a distribution of only 38% on unsecured claims.

2. The Debtors' failed to disclose in the Statement of Financial Affairs the $31,000.00 transfer to their son, and had not filed an amendment to disclose the transfer at the time of the Hearing.

3. C. Cuevas's testimony regarding their homestead claim (Trustee's Exhibit No. 2) was inconsistent with the express provision that the property was not homestead in the deed transferring it to their son.

4. The testimony at the 341 Meeting that property transferred to the Debtors' children were donations was inconsistent with testimony at the Hearing that the transfers were for debts owed.

5. The Debtors claimed that their children were creditors, but they did not list them in their bankruptcy schedules as creditors.

---

[12] *See supra* note 1. As of the date of this Memorandum Opinion and Order, the Debtors have failed to amend their Statement of Financial Affairs.

6.      The Debtors claimed to be paying rent to their son, but did not disclose a rent payment to him in the Schedules.

7.      C. Cuevas admitted that lawsuits were threatened prior to the property transfers to their children, indicating a possible attempt by the Debtors to prevent creditors from reaching the properties for satisfaction of the creditors' claims.

In addition to failing to satisfy the good faith requirement of § 1325(a)(3), the Plan as proposed fails also to meet the best interest of creditors' test under § 1325(a)(4). That provision requires that creditors receive at least as much as they would if the case were being liquidated under chapter 7. In In re Maddox, the Fifth Circuit discussed this test and stated that:

> A debtor must cross a "best interests of the creditor" threshold to have a confirmable plan in chapter 13. Simply put, under § 1325 the plan generally must provide that the unsecured creditors receive at least as much value as they would have received in a chapter 7 liquidation, and that the secured creditors must receive the present value of their collateral.

In re Maddox, 15 F.3d 1347, 1352 (5th Cir. 1994). The Trustee's calculations showed that under this test, the property available for distribution to creditors would be sufficient to pay the unsecured claims in full. Therefore, the proposed Plan failed to satisfy the requirements under § 1325(a)(4).

## Conclusion

Based on the totality of circumstances, the Court concludes that the Debtors' original Plan was not filed in good faith and, therefore, does not comply with § 1325(a)(3). The Court further concludes that the distribution under the Plan as originally proposed is less than what would be distributed on claims if the estate were liquidated under chapter 7. Thus, the Plan fails to satisfy the requirements of § 1325(a)(4). Accordingly, the Trustee's Objection should be sustained and

confirmation of the Plan should be denied. The Court concludes that unless the Debtors both amend the Plan to provide payment in full of unsecured claims that are not disallowed and amend the Statement of Financial Affairs to disclose all transfers of estate property within ten (10) days of the date of this Memorandum Opinion and Order, the case will be dismissed and the Debtors will be barred from refiling for 180-days.

A separate final judgment consistent with the Memorandum Opinion and Order will be entered by this Court in accordance with Federal Rule of Bankruptcy Procedure 9021.

IT IS, THEREFORE, ORDERED that the Objection to Confirmation is sustained, and confirmation of the Plan is denied as set forth herein.

SO ORDERED.

_____
Neil P. Olack
United States Bankruptcy Judge
Dated: May 28, 2009